**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

```
PRISON LEGAL NEWS, INC.,       )
                               )
                 Plaintiff,    )     CIVIL ACTION
                               )
v.                             )     No.  02-4054-MLB
                               )
ROGER WERHOLTZ,                )
                               )
                 Defendant.    )
                               )
```

**MEMORANDUM DECISION**

## I. INTRODUCTION

This case has a somewhat lengthy procedural history.  In 2002, plaintiff Prison Legal News, Inc., (PLN) a Washington state non-profit corporation that publishes the monthly periodical Prison Legal News, filed an action against defendant, in his capacity as Kansas Secretary of Corrections, alleging that its First Amendment rights are violated by Kansas Department of Corrections' (KDOC) current regulations.  The court consolidated plaintiff's case with two ongoing cases that had been originally filed by Kris Zimmerman and Joseph Jacklovich, inmates under the supervision of the KDOC. All plaintiffs sought declaratory and injunctive relief and actual damages.  Plaintiffs asserted that the KDOC regulations and policies violate their First Amendment rights since they prohibit inmates from receiving gift subscriptions of publications and limit the amount of money that inmates can spend on publications.  The regulations also do not require any notification to a publisher when KDOC does not deliver a publication.

On April 29, 2003, Judge G. Thomas VanBebber granted defendants' motion for summary judgment and entered judgment in favor of

defendants.  (Doc. 43).  Plaintiffs appealed.  On December 21, 2004, the Tenth Circuit reversed Judge VanBebber's decision.  Jacklovich v. Simmons, 392 F.3d 420 (10th Cir. 2004).  After remand, defendant filed a motion for partial summary judgment based on qualified immunity in his individual capacity.  This court granted defendant's motion for partial summary judgment as to all claims against him in his individual capacity.[1]  (Doc. 75).  This court also dismissed the cases filed by Zimmerman and Jaclkovich since their claims were rendered moot after they were paroled.

Therefore, the only parties remaining are PLN and defendant Roger Werholtz, in his official capacity as Secretary of Corrections.  The issues before the court are whether KDOC's regulations that prohibit gift subscriptions and limit the amount an inmate may spend on publications are unconstitutional.  Also, this court must fashion an appropriate procedure that provides notification to publishers when an inmate does not receive a publication.  Jacklovich, 392 F.3d at 434.

On February 13 and 14, 2007, this case was tried to the court. This decision represents the findings of fact and conclusions of law resulting therefrom.  Fed. R. Civ. P. 52(a).

## II.  FINDINGS OF FACT[2]

Kansas Administrative Regulation § 44-12-601(g)(1) provides that "[a]ll books, newspapers, and periodicals shall be purchased through

---

[1] This case had also included various defendants who were dismissed by this court's order.

[2] The facts set forth in this section consist of a general overview of the facts of this case.  Additional facts will be discussed, where appropriate, throughout the decision.

special purchase orders."[3]  This regulation prohibits the receipt of gift publications by requiring that inmates purchase publications only through their facility bank accounts.  An inmate may not have any other bank account outside the facility without permission and all funds must be deposited into the inmate's facility bank account. K.A.R. § 44-12-210.

In addition to prohibiting an inmate from receiving a publication not purchased through his facility bank account, KDOC Internal

---

[3] The entire regulation states as follows:
(g) Publications.

(1) Inmates may receive books, newspapers, and periodicals as permitted by the internal management policies and procedures of the department of corrections. All books, newspapers, and periodicals shall be purchased through special purchase orders. Only books, newspapers, and periodicals received directly from a publisher or a vendor shall be accepted. However, an inmate shall be permitted to receive printed material, including newspaper and magazine clippings, if the material is included as part of a first-class letter that does not exceed one ounce in total weight.

(2) The procedures for censorship of mail listed in subsection (d) of this regulation shall be used for censorship of publications.

(3) No publication that meets either of the following conditions shall be allowed into the facility:

(A) Contains sexually explicit material, as described in K.A.R. 44-12-313, or is otherwise illegal, in whole or in part; or

(B) meets, in whole or in part, the test for censorship of mail in subsection (d) of this regulation.

(4) Inmates shall have the option of having censored publications in their entirety either mailed out of the facility at their own expense or discarded.

(5) Before transferring between institutions or facilities, the inmate shall arrange for a change of address for newspapers and periodicals. Newspapers and periodicals shall not be forwarded for more than 30 days after the date of transfer.

K.A.R.  § 44-12-601(g).

Management Policy and Procedure (IMPP) 11-101 limits the amount an inmate may spend on publications by use of a privilege and incentive system. IMPP 11-101 creates four groups of levels for inmates. Inmates on the intake level are newly admitted to the KDOC and do not rise to Level I until they are transferred to a facility. During intake level, an inmate is at the reception and diagnostic unit and cannot spend any funds on publications. An inmate on Level I may spend $40 a month on canteen expenditures but may not spend any funds on publications (with the exception of a primary religious text).[4]

---

[4] IMPP 11-101 (4/21/06) provides as follows:

VI. Limitation on Use of Incoming and Outgoing Funds

A. For inmates assigned to Intake Level, outgoing funds shall be limited to fees for legal services, and for inmates on Level I, no outgoing funds may be used to purchase books, or, newspaper or magazine subscriptions.

B. Except as provided below, there shall be a $40.00 limit on outgoing funds.

1. Inmates may exceed the $40.00 limit, if necessary, for the purchase of a primary religious text if the cost of the text is greater than that amount.

2. The $40.00 limit shall not apply to payments to the following:

a. The court for verified restitution and/or court costs;

b. Verified fees payable to an attorney for legal services;

c. Verified child support payments;

d. Specialized fees, expenses as authorized by the warden or designee; and,

(1) As possible, approval for such payments shall be payable to the vendor or service provider only.

e. Purchases of approved handicraft materials/supplies.

C. Upon recommendation of the unit team and approval of the warden or designee, offenders assigned to private industry (minimum

After 120 days, an inmate may advance to Level II. On Level II, an inmate may spend $40 on publications and $110 on canteen purchases. After another 120 days, an inmate may advance to Level III, the highest level. At Level III, an inmate may spend $40 on publications and $180 at the canteen. The $40 limit on publications may be exceeded once every three months for the purchase of one newspaper subscription.[5]

An inmate must follow certain procedures prior to ordering a publication. First, an inmate must fill out a Special Purchase Order form and a publication form and submit those to the business office. The business office will then ensure that the inmate has the proper funds and that the publication is allowable under the regulations. Once the inmate has completed this process the business office will order the publication. If an inmate has ordered a publication without completing this process, the publication will be censored. Upon receipt of the publication, the mail room requests the inmate to establish that he followed the procedures by producing the special

---

wage) or those who receive government benefits may be authorized, on an individual basis, to send out funds in excess of the $40.00 per pay period limit.

    D. Inmates on Incentive Level II or Incentive Level III are authorized to maintain one (1) newspaper subscription, and may exceed the $40.00 limit for outgoing funds in order to do so.

    1. The expense for the newspaper subscription shall be included in the $40.00 limit.

    2. Such an exception shall be allowed no more than one (1) time per every three (3)-month period.

    [5] This exception was created since most yearly newspaper subscriptions cost in excess of $40. However, there is no exception in the rules for a subscription or publication that is not a newspaper subscription.

purchase order and the publication form.  If the inmate cannot produce those forms (or, if the form has been lost the inmate can utilize his bank statement showing the purchase), then the publication is censored.

When a publication is censored, the inmate is given a notification of publication seizure/censorship.  The form allows the inmate to appeal the decision within three days of receipt of the notice.  If the inmate does not successfully appeal the decision, the items are either mailed out of the facility at the inmate's expense or discarded.  IMPP 12-134.  The notice is not sent to the publisher. The inmate is responsible for informing a publisher that the item was not delivered.[6]

---

[6] Kan. Admin. Regs. § 44-12-601(d)(2) provides:

(d) Censorship grounds and procedures.

...

(2) If any communication to or from an inmate is censored, all of the following requirements shall be met:

(A) Each inmate shall be given written notice of the censorship and the reason for the censorship, without disclosing the censored material.

(B) Each inmate shall be given the name and address of the sender of incoming mail, if known, or the addressee of outgoing mail and the date the item was received in the mail room. <u>It shall be the responsibility of the inmate to contact the sender of censored incoming mail or the addressee of censored outgoing mail, if the inmate so desires.</u>

(C) The author or the addressee of the censored correspondence shall be given a reasonable opportunity to protest that decision.

(D) All protests shall be referred to a prison official other than the person who originally disapproved the correspondence.

Kan. Admin. Regs. § 44-12-601(d)(2)(emphasis supplied).

Plaintiff requests that this court declare KDOC's regulations prohibiting gift subscriptions and limiting the amount of funds that may be spent on publications unconstitutional.[7]  Plaintiff also requests that the court adopt its proposed notification to the publisher of a censored publication. (Doc. 72 at exh. 2). Defendant responds that its current regulations are reasonably related to legitimate correctional interests.

## III. CONCLUSIONS OF LAW

Resolution of the inmates' claims requires balancing between the constitutional rights retained by inmates and those who send them publications against the deference owed to prison authorities when it comes to prison administration.  Inmates have a First Amendment right to receive information while in prison to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison. In weighing the First Amendment interests against the deference afforded corrections officials, the reasonableness of the regulations and policies matters.  Although the Court has continually recognized (1) the difficulty of running a prison, (2) the separation of powers concerns when a federal court assumes a function (prison administration) entrusted to the legislative and executive branches, and (3) the need for federal courts to accord deference to state prison authorities, those factors do not mean that every prison regulation is insulated from review no matter what the facts may be. As the Court stated in Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 109 S. Ct. 1874, 104 L. Ed.2d 459 (1989):

> But a policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims whether arising in a federal or state institution. When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights.

The Court has determined that when a prison regulation impinges on inmates' constitutional rights, the regulation

---

[7] Plaintiff does not challenge defendant's regulation that prohibits inmates on intake level from receiving publications.

-7-

> is valid if it is reasonably related to legitimate penological interests. The four-factor test supplied by the Court requires a look at (1) whether a valid and rational connection exists between the regulation and the asserted legitimate governmental interest, (2) whether alternative means of exercising the constitutional right remain available to inmates, (3) any effect accommodating the right would have on guards and inmates, and (4) the absence of ready alternatives.

Jacklovich v. Simmons, 392 F.3d 420, 426 (10th Cir. 2004).

### A. Restricting Publications

The present KDOC policies prohibit gift subscriptions, limit spending on publications for Level II and III inmates to only $40 a month and entirely prohibit an inmate on Level I from purchasing publications. The first factor the court must consider is whether a valid and rational connection exists between the regulations and the asserted legitimate governmental interest. Jones v. Salt Lake County, ---F.3d---, 2007 WL 2812594 *3 (10th Cir. Sept. 28, 2007)(citing Turner v. Safley, 482 U.S. 78, 89-90, 107 S. Ct. 2254, 96 L. Ed.2d 64 (1987)).

During trial, defendant set forth various interests that he asserts are legitimate penological objectives. The court will address these in turn.

#### 1. Legitimate Governmental Interest

##### A. Security Concerns[8]

First, Charles Simmons, Deputy Secretary of KDOC, testified that the prohibition on gift subscriptions allows KDOC to track an inmate's receipt of money in his facility bank account. By allowing an inmate to receive a gift subscription, the facility cannot investigate the

---

[8] Plaintiff's hearsay objection to defendant's exhibit N is sustained.

source of the funds and the individual who purchased the subscription. Simmons stated that KDOC's concerns are that the subscription is being purchased as a result of extortion or strong-arming, debt collection, or trafficking of contraband by another inmate. (Trial Tr. at 52-53). Donald Halpin, Jerry Rice and Joseph Jacklovich, all formerly incarcerated in KDOC facilities, testified that strong-arming, dealing or trading in a content-neutral publication does not occur in KDOC facilities.[9]  Similarly, plaintiff's expert, Patrick McManus, testified that publications are not something of value and that strong-arming using a publications would be very unlikely. Defendant presented no testimony that publications are used for extortion, strong-arming, debt collection or trafficking.[10]

Accordingly, there is no rational and valid connection between the prohibition of gift subscriptions and security concerns. See Crofton v. Roe, 170 F.3d 957, 960 (9th Cir. 1999)(strong-arming rationale rejected when the warden failed to produce any evidence that strong-arming was used to obtain gift subscriptions).

### B.   Level and Incentive System

Second, witness Simmons testified that the privilege and incentive system was created for inmates to earn privileges based on good behavior. Inmates can lose privileges earned by bad behavior or

---

[9] The only publications that had been used at KDOC for bartering were magazines that are currently prohibited and censored due to content.

[10] It is interesting, however, that inmates testified that items from the canteen are frequently used for strong-arming and KDOC's policies currently allow an Inmate on Level III to spend $180 a month on canteen items. An inmate on Level III therefore can spend $140 more on canteen items than he can on publications.

other negative activities which result in a reduction in privilege level. Defendant asserts that allowing gift subscriptions and lifting the limitations on publication spending will defeat the purpose of the privilege and incentive system. Simmons testified that if an inmate were able to receive gift subscriptions then the inmate would get something that he did not earn.

However, defendant failed to establish how receipt of a gift subscription will drastically affect its privilege and incentive system. Inmates will still be motivated to rise to the next level because there are other incentives that coordinate with a rise in level. For example, an inmate on Level I cannot have personal audio/visual equipment. However, those items are available once an inmate is on Level II. Moreover, an inmate is restricted to organizations and activities on Levels I and II, but is eligible to participate in all activities on Level III. Other examples include the number of visitors an inmate can receive, the availability of the inmate's personal property, the amount of incentive pay an inmate may receive and the amount that can be expended in the canteen. IMPP 11-101, Attachment A. The court highly doubts that the availability of gift subscriptions will cause an inmate to lose motivation to earn other privileges through the system. Moreover, defendant wholly failed to establish how receipt of a gift subscription will affect its privilege and incentive system.

Defendant has also failed to establish that there is a rational and valid connection between the limitation on outgoing funds spent on publications and the use of the privilege and incentive system. An inmate on Intake Level will have no incentive to rise to Level I

-10-

if that inmate is interested in purchasing publications because no publications are allowed on Level I. An inmate on Level I will have incentive to rise to Level II so that he may purchase publications but that inmate will not have an incentive to rise to Level III because inmates on Levels II and III can only expend $40 a month on publications.

Defendant could not put forth any rational explanation for entirely restricting an inmate on Level I from publications and limiting inmates on Levels II and III to only $40 per month on publications. Witnesses for defendant simply kept repeating that it was the amount that the KDOC determined was reasonable. In contrast to its policies on spending on publications, expenditures for the canteen do rise for each level. At intake, an inmate may spend $10 per month. On Level I, an inmate may spend $40 per month. Levels II and III are allowed $110 and $180, respectively. Expenditures on publications, however, do not rise with the privilege level, with the exception between Level I and II. Moreover, KDOC allows an inmate to spend an unlimited amount on handicraft materials. Witness Simmons testified that there is no limitation on handicraft materials because those items frequently exceed $40. However, there are many subscriptions and legal books that exceed $40 as well. While KDOC may want to encourage arts and crafts, the court does not comprehend why KDOC does not want to encourage, and in actuality limits, an inmate spending time reading and gaining knowledge.

Accordingly, the court finds that there is no rational and valid connection between KDOC's policies and the privilege and incentive system.

-11-

### C.   Avoidance of Legal Obligations

Finally, defendant asserts that inmates will elect to receive gift subscriptions paid for by friends and family instead of those individuals sending money to KDOC in order to avoid any unpaid obligations that the inmate may have and to avoid the automatic 10% savings of all incoming money in an inmate's account. Defendant argues that a gift subscription will circumvent KDOC's policies of requiring any funds in an inmate's account to first pay outstanding obligations before purchasing any subscriptions.  While the court believes that the policies requiring inmates to pay outstanding obligations and save 10% of their funds prior to purchasing other items are reasonable, the court finds it difficult to believe that many inmates will request that a relative order a gift subscription instead of sending money to that inmate.  Money received from friends and family members and placed in an inmate's account is utilized by the inmate for items other than publications, most importantly, as testified by prior inmates, to buy canteen items.

During trial, defendant failed to establish that the allowance of gift subscriptions will result in inmates intentionally having relatives send gift subscriptions instead of money orders. Moreover, Other well-run prison systems, including the Federal Bureau of Prisons and numerous state correctional facilities, allow gift subscriptions. If the end result of allowing gift subscriptions was an avoidance of inmate's obligations than the court would expect that it would be prohibited by those facilities.

Again, defendant has failed to demonstrate a rational and valid connection between the prohibition of gift subscriptions and an

inmate's avoidance of personal obligations.

### 2.     Alternative Means

The second factor relevant in determining the reasonableness of a prison restriction is whether there are alternative means of exercising the right. Turner, 482 U.S. at 90. "Where other avenues remain available for the exercise of the asserted right courts should be particularly conscious of the measure of judicial deference owed to corrections officials . . . in gauging the validity of the regulation." Id.

Witness Simmons testified that inmates have access to the library, which includes numerous publications and internet access. However, no KDOC facility subscribes to plaintiff's publication. Moreover, there was testimony that the library's publications are limited and only one copy of each publication is on file in the library. Prior inmates testified that they frequently encountered publications with pages missing and torn. Also, the number of inmates that can be in the library is limited. If an inmate in maximum security desires to go to the library, he must sign up at a certain time. Frequently, however, an inmate may be unable to go to the library because the list was full at the time he had access to the list.

The court finds that the library is not a sufficient alternative means to exercise the inmate's right to receive information.

### 3.     Impact on Guards and Inmates

The third factor is the impact accommodation of the "constitutional right will have on guards and other inmates, and on the allocation of prison resources generally. . . . When accommodation

-13-

of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." Turner, 482 U.S. at 90.

The only possible impact of eliminating the gift subscription ban and allowing inmates to spend an unlimited amount on publications is an increase in the amount of mail that inmates receive. While this may cause a facility to expend more time delivering and sorting mail, it was not shown to have a significant effect on the facility. Moreover, lifting the ban on gift subscriptions will eliminate the need to check whether that subscription was purchased through the purchase order system. So, in reality, a facility may have less obligations and responsibilities when a subscription is received in the mailroom.

Therefore, the court finds that the impact, if any, will not be significant.

### 4. Absence of Ready Alternatives

"Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id. In this case, there are obvious, easy alternatives to the regulations that accommodate the First Amendment right to information while imposing a de minimis burden on the facilities. KDOC can allow inmates to receive gift subscriptions. Again, numerous facilities, including the Federal Bureau of Prisons allow gift subscriptions. If the facility has valid security concerns that are substantiated after the ban on gift subscriptions is lifted, it may consider requiring a gift subscription to include the name and address of the person who purchased the

-14-

subscription so that the facility can investigate whether strong-arming occurred. KDOC may also formulate a new regulation which allows inmates to spend more on publications and properly correlates with its privilege and incentive system. Limitation on inmate spending may be reasonable if the facility can identify the purpose of the limitation and if that spending was correlated with the privilege and incentive system.[11]

Accordingly, the court finds that there are ready alternatives available to guarantee an inmate's right to publications.

### 5. Conclusion

The court is more disinclined than most to interfere with the running of prisons, a subject which courts generally are ill-equipped to understand, much less to undertake. However, the court concludes that the KDOC prison regulations are not reasonably related to the penological interests identified by defendant. The inmates do not have alternative means available to access desired publications and the elimination of the regulations will not have a significant impact on the facility, inmates and guards. The court also finds that there are ready alternatives available to KDOC that would meet its stated penological interests.

Accordingly, K.A.R. § 44-12-601(g)(1) and IMPP 11-101, Section VI, are constitutionally infirm and therefore invalid.

---

[11] During trial, witness Werholtz was questioned by the court. The court specifically stated that if it did not find that the regulations limiting outside spending were reasonable then did the witness have another amount that would be reasonable. Witness Werholtz testified that he did not have an alternate amount that he considered reasonable to spend on publications.

**B.    Notification to Publishers**

The Tenth Circuit instructed this court on remand to fashion an appropriate procedure in which the publisher would receive "adequate individualized notice" that would give it an opportunity to be heard. Jacklovich, 392 F.3d at 433-34.  Both parties have submitted proposed procedures.  Plaintiff has submitted the following:

```
DATE:_____
TO: Inmate #XXXX
Institution_____
RE: _____  Issue date:_____
Title of Publication
The   publication   identified   above,   published   by
_____ [publisher], has been rejected in
accordance   with   KDOC   regulations,   specifically
_____.
This   publication   has   been   rejected   because
_____
_____
_____ [provide reference to the specific
portions  or  pages  of  the  publication  which  are
objectionable or other reason for rejection, the KDOC
regulations  or  policies  which  are  applicable and  the
reasons for the decision to reject]. Either you or the
publisher or both may appeal this decision. If there is no
appeal, the publication will be mailed out at your expense
if you so request or destroyed.
If you wish to appeal this decision, you must do so within
20 days of the receipt of this letter by writing to KDOC
Secretary, 900 SW Jackson St., Topeka, KS 66612, or by
handing  an  appeal  in  writing  to  your  unit  team  and
including your reasons for the appeal and any materials you
wish considered. The decision will be made based on the
publication  and  the  materials  you  provide  or  by
_____[explain alternative procedure if
to be used]. A decision will be rendered within 20 days of
the receipt of your appeal and you will be notified in
writing. The publication in question will be held until the
decision in this matter is made and then it will be
delivered to you, mailed out at your expense if you so
request or destroyed, depending on the outcome of the
appeal.
_____   _____
Secretary or designee Date
cc [Publisher name and address]
```

(Doc. 72, exh. 2).

-16-

<08><08>
<08>
<08><08><08><08>
<08><08><08><08><08><08><08><08><08><08><08><08><08><08><08><08><08><08><08><08>

Defendant submits that a notification would be immediately sent to the publisher if the publication is censored for content but not if the publication was censored due to the inmate's inability to receive a publication because of the inmate's current level or behavior restrictions. Defendant asserts that a publication will receive a "content neutral nondelivery" notification on an annual basis. This notification will include the department's regulations and the reasons why their publication may not be delivered. The publishers will have 15 days to challenge the validity of the regulation or policy. Inmates will still receive notification at the time their publication is not delivered. (Doc. 73).

Plaintiff asserts that defendant's proposed notification when a content neutral publication is censored does not provide publishers with adequate notice. Defendant responds that individualized notification will be too time consuming and costly. However, the court's ruling struck the policies prohibiting gift subscriptions and limiting the funds an inmate may spend on publications. Therefore, defendant's argument that it will be too time consuming and costly is moot. After the court's ruling, the only foreseeable time a publication will be censored will be for content. Defendant agreed to send an individualized notice to the publisher when it censored a publication due to content. In the rare event that a publication is censored for a non-content reason, the court finds that simultaneous notification to both the inmate and the publisher satisfies due process.

The court finds that plaintiff's proposed notification, based on the notification utilized by the Federal Bureau of Prisons, is

sufficient to provide adequate notice to both the inmate and the publisher.

**IV.  CONCLUSION**

K.A.R. § 44-12-601(g)(1) and IMPP 11-101, Section VI, are constitutionally infirm and therefore invalid. Defendant must notify both the inmate and publisher at the time a publication is censored by utilizing the form proposed by plaintiff. (Doc. 72, exh. 2). The clerk is hereby ordered to enter judgment for plaintiff.

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed five pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this ___1st___ day of October 2007, at Wichita, Kansas.

-18-

<pre>
                              s/ Monti Belot
                              Monti L. Belot
                              UNITED STATES DISTRICT JUDGE
</pre>

-19-